UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LARON FRANKLIN,

               Plaintiff,

v.

MATT MACAULEY et al.,

               Defendants.

_____/

Case No. 1:22-cv-1005

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Macauley, Stump, Fox, and Driesenga. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim against Defendant Schultz premised upon his alleged verbal harassment of Plaintiff. Plaintiff's Eighth Amendment excessive force claims against Defendants Nowicki and Schultz remain in the case.

<u>Discussion</u>

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues Warden Matt Macauley, Sergeants/Correctional Officers Gary Stump and Kyle Fox, Correctional Officers Joseph Thomas Nowicki and Matthew Schultz, and Registered Nurse Heidi Driesenga.

Plaintiff's complaint itself is scant. He avers that Defendants Nowicki and Schultz assaulted him, and that Defendant Schultz harassed him with racial epithets and by calling him a homosexual. (ECF No. 1, PageID.3.) Plaintiff avers that Defendants Stump and Fox falsified documents and "let them injure[] [him] more." (*Id.*) Plaintiff told Defendant Driesenga about his injuries, but "no one did anything to help" him. (*Id.*)

Plaintiff has attached several exhibits to his complaint that provide more context for his claims. On February 12, 2021, Defendant Nowicki issued a misconduct to Plaintiff, charging him with assault and battery upon staff. (ECF No. 1-1, PageID.11.) The misconduct report indicates that Defendant Nowicki saw that Plaintiff was in his cell with a cordless phone. (*Id.*) He ordered Plaintiff to hand over the phone, and Plaintiff responded, "F*** you I'm using it." (*Id.*) Defendant Nowicki opened Plaintiff's cell door and stuck his left hand in the cell to retrieve the phone. (*Id.*) Defendant Nowicki alleged that Plaintiff "squared his shoulders and dropped his center of gravity in a fighting stance and raised his right hand clenched in a fist to strike." (*Id.*) Defendant Nowicki raised his arm to stop the punch, and Plaintiff grabbed his arm and pulled him into the cell. (*Id.*) Defendant Nowicki placed Plaintiff's head on his chest to try to take him in to the hallway, but Plaintiff struck Defendant Nowicki in the face twice with his fist. (*Id.*)

2

Plaintiff has also submitted copies of two critical incident participant reports prepared by Officer Moore (not a party) and Defendant Stump. (*Id.*, PageID.13–14.) According to those reports, Defendants Nowicki and Schultz, as well as Officers Moore, Darnell, and Smalley, were involved in the incident. (*Id.*, PageID.14.) Plaintiff was "struggling and resisting" as they were trying to restrain him. (*Id.*) Defendant Stump responded and told Plaintiff to stop resisting. (*Id.*) Officers were ultimately able to restrain Plaintiff, but Plaintiff "continued to move his body and would not stop resisting staff." (*Id.*) Defendant Stump secured Plaintiff's ankles and slid him out of the cell. (*Id.*) Defendant Stump asked Defendant Nowicki what had happened, and Defendant Nowicki "stated that he told [Plaintiff] that his time was up on the phone and [Plaintiff] said f*** you, and did not give him the phone." (*Id.*) Defendant Nowicki told Defendant Stump that after Plaintiff punched him in the face, "they both kind of fell into the cell." (*Id.*) Following the incident, Plaintiff was taken to segregation. (*Id.*)

Plaintiff submitted a statement during the investigation. He indicated that he had permission to use the phone and that he was telling his mother to "call the news and tell them what's going on in here." (*Id.*, PageID.15.) Defendant Nowicki overheard that statement and told Plaintiff to "get off the f***ing phone." (*Id.*) Defendant Nowicki opened the cell door, and Plaintiff hung up the phone and gave it to him. (*Id.*) Plaintiff stomped his feet and said, "that's some bull*** I was not done talking to my mom." (*Id.*) Plaintiff believed that Defendant Nowicki took Plaintiff stomping his feet and hitting his thigh with his fist as threatening behavior because he flinched then opened the cell and punched Plaintiff in his face. (*Id.*) Plaintiff averred that he and Defendant Nowicki fell onto his bunk and that Defendant Nowicki was on top of him, punching him numerous times. (*Id.*, PageID.16.)

Three inmates were interviewed as part of the investigation. Inmate Holcroft stated, "The officer came into our cell and just started hitting my bunky. My bunky didn't do anything wrong. My bunky gave him the phone back and then he attacked [Plaintiff]." (*Id.*, PageID.12.) Inmate Adams stated that Defendant Nowicki "just went after [Plaintiff] over a phone and hit [Plaintiff]." (*Id.*) He never saw Plaintiff hit Defendant Nowicki. (*Id.*) Finally, inmate Turner said, "I was standing by the door and the officer got mad and ran in the cell. I just backed away so I could not see what happened in the cell." (*Id.*)

Plaintiff appeared before a hearing officer on the misconduct charge on February 24, 2021. (*Id.*, PageID.10.) The hearing officer first reviewed a video outside of Plaintiff's presence. (*Id.*) According to the report, the video showed Defendant Nowicki at Plaintiff's cell door, speaking to the occupants. (*Id.*) Defendant Nowicki "opens the cell door, reaches his left arm into the cell, and then appears to be pulled into the cell. A struggle ensues inside the cell." (*Id.*) The hearing officer also reviewed the misconduct report, the hearing investigation report, the prisoner witness statements, photographs of Defendant Nowicki showing "contusions to his face and blood on his shirt," the participant statements, and the misconduct sanction screening form and sanction assessment. (*Id.*) Plaintiff stated that "he was thinking he could not believe [an officer] would strike him." (*Id.*) He averred that the blood on Defendant Nowicki's shirt was Plaintiff's, and that he blacked out during the incident. (*Id.*)

The hearing officer found Plaintiff guilty of assault and battery, a Class I misconduct. (*Id.*) He concluded that the video was consistent with the misconduct report, "showing [Defendant Nowicki] being pulled into the cell; [Defendant Nowicki] did not run into the cell." (*Id.*) The hearing officer concluded that the prisoner witnesses were not credible, and that Plaintiff's claim of self-defense was not believable. (*Id.*) The hearing officer concluded that Plaintiff struck

4

Defendant Nowicki and did so "in anger or with the purpose of abusing or injuring another." (*Id.*) He sanctioned Plaintiff to 10 days' detention and 30 days' loss of privileges. (*Id.*)

Plaintiff was also criminally charged with assault of a prison employee in the Ionia County Circuit Court. (*Id.*, PageID.9.) On April 27, 2022, a jury found him not guilty. (*Id.*)

Plaintiff's exhibits indicate that he filed a grievance about the incident; the copies attached to his complaint suggest that his Step One grievance was denied as untimely. (*Id.*, PageID.19.) Defendant Macauley upheld that finding at Step II. (*Id.*, PageID.19–20.)

Based on the foregoing, the Court construes Plaintiff's complaint to assert violations of the Eighth Amendment premised upon: (1) the use of excessive force; (2) Defendant Schultz's verbal harassment; and (3) Defendant Driesenga's failure to provide medical care. The Court has also construed Plaintiff's complaint to assert that Defendants Fox and Stump violated his Eighth Amendment rights by failing to intervene in the use of force and his Fourteenth Amendment due process rights by falsifying documents. Finally, Plaintiff appears to suggest that Defendant Macauley violated his rights by not acting upon his grievance. Plaintiff seeks damages, as well as for Defendants "to go by the law." (ECF No. 1, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Claims Against Defendant Macauley

Plaintiff suggests that Defendant Macauley rejected his Step Two grievance concerning the incident. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendant Macauley encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff avers only that Defendant Macauley rejected his Step Two grievance. As noted above, that is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Macauley was personally involved in the events described in Plaintiff's complaint. Conclusory

allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Furthermore, to the extent Plaintiff suggests that Defendant Macauley violated his rights by rejecting his Step Two grievance, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Macauley's conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendant Macauley's failure to act upon his complaint. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Macauley's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendant Macauley based on a failure to act upon his grievance.

### B.    Claims Against Defendant Fox

Plaintiff vaguely contends that Defendant Fox "falsified documents and let them [presumably, the officers involved in the incident] injure[] me more." (ECF No. 1, PageID.3.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Here, Plaintiff's complaint is completely devoid of facts regarding how Defendant Fox allegedly falsified documents and allowed the other officers to further injure Plaintiff. Moreover, Defendant Fox is not even mentioned in any of Plaintiff's attached exhibits. There is nothing set forth in Plaintiff's complaint and attached exhibits that permits the Court to infer that Defendant Fox was even involved in the incident that occurred on February 12, 2021. Plaintiff's claims against Defendant Fox fall far short of the minimal pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P 8(a)(2). The Court, therefore, will dismiss Plaintiff's complaint against Defendant Fox.

### C.     Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert that several of the named Defendants violated his Eighth Amendment rights in various ways. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-

indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Excessive Force

Plaintiff contends that Defendants Nowicki and Schultz used excessive force by assaulting him on February 12, 2021. (ECF No. 1, PageID.3.) Plaintiff's claims must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotation marks omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects

an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

As noted above, Plaintiff was found guilty of a Class I misconduct, assault and battery upon Defendant Nowicki, for allegedly punching Defendant Nowicki in the face and then pulling him into the cell. (ECF No. 1-1, PageID.10.) Plaintiff was subsequently acquitted of assaulting a prison employee following a jury trial in the Ionia County Circuit Court. (*Id.*, PageID.9.) Plaintiff contends that after he and Defendant Nowicki fell into his cell, they fell onto the bottom bunk. (*Id.*, PageID.16.) Defendant Nowicki was on top of Plaintiff and punched him "so many times [that Plaintiff] went to sleep." (*Id.*) Plaintiff's exhibits suggest that Defendant Schultz got involved in the incident only after Defendant Nowicki and Plaintiff fell back into Plaintiff's cell. (*See, e.g.*, *id.*, PageID.14.) Plaintiff's allegations of excessive force are not necessarily precluded by the fact that he was found guilty of the Class I misconduct charge. Given his allegations, the Court concludes that he has set forth plausible Eighth Amendment excessive force claims against Defendants Nowicki and Schultz.

## 2.    Failure to Intervene by Defendant Stump

As noted *supra*, the Court has construed Plaintiff's complaint to assert an Eighth Amendment failure to intervene claim against Defendant Stump based upon Plaintiff's allegation that Defendant Stump "let [the other officers] injure[] [him] more." (ECF No. 1, PageID.3.)

An officer is liable for another officer's use of excessive force where the defendant "observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018);

*Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). "[T]he Sixth Circuit has repeatedly held that officers are not liable under failure-to-intervene claims when the ostensible opportunity and means to intervene does not last long enough for the officer to both perceive what was going on and intercede to stop it." *LaPlante v. City of Battle Creek Mich.*, 30 F.4th 572, 582 (6th Cir. 2022) (quoting *Pelton v. Perdue*, 731 F. App'x 418, 426 (6th Cir. 2018)) (internal quotation marks omitted).

The exhibits attached to Plaintiff's complaint suggest that Defendant Stump arrived on scene and found that Plaintiff was resisting as Defendants Nowicki and Schultz, as well as Officers Moore, Darnell, and Smalley, were applying restraints. (ECF No. 1-1, PageID.14.) Defendant Nowicki advised Defendant Stump that Plaintiff had punched him in the face and that they "both kind of fell into the cell." (*Id.*) Plaintiff's complaint and exhibits are devoid of facts from which the Court could conclude that Defendant Stump observed Defendants Nowicki and Schultz using excessive force against Plaintiff and failed to prevent such use of force. The Court, therefore, will dismiss any Eighth Amendment failure to intervene claim against Defendant Stump.

### 3. Verbal Harassment

Plaintiff contends that Defendant Schultz verbally harassed him by using racial epithets and calling him a homosexual. (ECF No. 1, PageID.3.) While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment that Plaintiff asserts against Defendant Schultz.

### 4.       Denial of Medical Care

In his complaint, Plaintiff alleges that he told Defendant Driesenga about his injuries. (ECF No. 1, PageID.3.) He also avers that the officers "damage[d] [his] throat" a little when they jumped on him. (*Id.*) Plaintiff told Defendant Driesenga about these issues "that day and other days, but no one did anything to help [him]." (*Id.*) The Court has construed Plaintiff's complaint to assert an Eighth Amendment denial of medical care claim against Defendant Driesenga.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if

informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.,*
*Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died
from a perforated duodenum exhibited an "objectively serious need for medical treatment," even
though his symptoms appeared to the medical staff at the time to be consistent with alcohol
withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed
tendon was a "quite obvious" medical need, since "any lay person would realize to be serious,"
even though the condition was not visually obvious). If the plaintiff's claim, however, is based on
"the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly
minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical
evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier
v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a
sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867
(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can
be "satisfied by something less than acts or omissions for the very purpose of causing harm or with
knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of
facts from which the inference could be drawn that a substantial risk of serious harm exists, and
he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]
plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison
official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*,
894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Although Plaintiff contends that Defendant Driesenga ignored his requests for medical attention, Plaintiff's complaint does not allege sufficient facts from which the Court could infer that he suffered a serious medical need. Plaintiff alleges only that he suffered "injuries" as well as "damage" to his throat. (ECF No. 1, PageID.3.) He has attached the pictures of him that were taken by Defendant Schultz following the use of force, but those pictures appear to show only cuts and bruises. Plaintiff fails to describe the "damage" to his throat that he allegedly suffered. Cuts and bruises, however, do not constitute a serious medical need for purposes of the Eighth Amendment. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (concluding that minor lacerations, cuts, and soreness in two fingers did not constitute serious medical needs); *Blackmore*, 390 F.3d at 898

17

(citing cases involving minor injuries that did not support Eighth Amendment claims, including cuts and bruises resulting from a glass splinter that did not require stitches or painkillers); *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (reasoning that the failure to treat "the sorts of ailments [including scrapes and bruises] for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution"). Nothing set forth in Plaintiff's complaint permits the Court to infer that any of Plaintiff's injuries were severe and, thus, constituted a serious medical need. *See Telles v. Stainslaus Cnty. Sheriff's Dep't*, No. 1:10-cv-1911, 2011 WL 2036962, at *5 (E.D. Cal. May 24, 2011) (concluding that cuts and bruises were not a serious medical need when the plaintiff failed to establish the severity of his injuries). Plaintiff has failed to allege sufficient facts for purposes of the objective prong of an Eighth Amendment claim regarding the denial of medical care. The Court, therefore, will dismiss Plaintiff's claim against Defendant Driesenga.

### D.   Fourteenth Amendment Due Process Claims

The Court has construed Plaintiff's complaint to assert that Defendant Stump violated his Fourteenth Amendment due process rights by falsifying documents, presumably to cover up the alleged use of excessive force by Defendants Nowicki and Schultz. As discussed below, Plaintiff cannot maintain either a procedural due process nor a substantive due process claim against Defendant Stump.

### 1.   Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or

18

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

As an initial matter, the erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); *Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused.").

"A constitutional violation may occur if, as a result of an accusation, the Plaintiff was deprived [of] a protected liberty interest without due process." *Reeves v. Mohr*, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.

515 U.S. at 484. According to the Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As noted above, Plaintiff was charged with and convicted of a Class I misconduct, assault and battery upon Defendant Nowicki. A Class I misconduct is a "major" misconduct for which prisoners may be deprived of good time or disciplinary credits. *See* MDOC Policy Directive 03.03.105 ¶¶ B, AAAA (eff. July 1, 2018). Plaintiff, however, does not allege that this conviction had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2012 and 2014 for crimes committed in 2011. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=857010 (last visited Nov. 22, 2022). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Plaintiff's exhibits indicate that he was placed in segregation pending his misconduct hearing, which occurred two weeks after the February 12, 2021, incident. (ECF No. 1-1, PageID.14.) He was also sanctioned with 10 days' detention because of the misconduct conviction. (*Id.*, PageID.10.) Plaintiff fails to allege, however, that his placement in segregation constituted an "atypical and significant deprivation" *See Sandin*, 515 U.S. at 484. In *Sandin*, the United States

20

Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App's 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff was also sanctioned to 30 days' loss of privileges. (ECF No. 1-1, PageID.10.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." *See* MDOC Policy Directive 03.03.105, Attach. E. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that

prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services). Plaintiff, therefore, fails to allege that his placement on loss of privileges status constituted an "atypical and significant" deprivation. *See Sandin*, 515 U.S. at 484.

For the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendant Stump. Such claim will, therefore, be dismissed.

## 2. Substantive Due Process

To the extent Plaintiff intended to raise a substantive due process claim regarding the alleged false documents, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394

(1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Moreover, Plaintiff's suggestion that Defendant Stump falsified documents, without any allegations detailing how he did so, is insufficient to rise to a level of conduct that shocks the conscience. Consequently, any intended substantive due process claim against Defendant Stump will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Macauley, Stump, Fox, and Driesenga will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim against Defendant Schultz premised upon his alleged verbal harassment of Plaintiff. Plaintiff's Eighth Amendment excessive force claims against Defendants Nowicki and Schultz remain in the case.

An order consistent with this opinion will be entered.


Dated:    November 29, 2022                    /s/ Robert J. Jonker
                                               Robert J. Jonker
                                               United States District Judge