UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARON FRANKLIN,

        Plaintiff,

Case No. 1:22-cv-1005

Hon. Robert J. Jonker

v.

MATT MACAULEY, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Laron Franklin ("Franklin"), a prisoner formerly in the custody of the Michigan Department of Corrections (MDOC).[1]

Franklin sued seven defendants for claims which arose at the MDOC's Bellamy Creek Correctional Facility (IBC). *See* Opinion (ECF No. 6, PageID.42). All defendants have been dismissed except for Corrections Officers (COs) Nowicki and Schultz. *Id*. at PageID.63; Order (ECF No. 7).[2] This matter is now before the Court on defendant Schultz's Motion for summary judgment on the basis of exhaustion (ECF No. 21). Franklin did not oppose the motion.

**I.**    **Background**

This Court noted that "[p]laintiff's complaint itself is scant." Opinion at PageID.42. Specifically,

---

[1] When Franklin filed this lawsuit, he was incarcerated at the Carson City Correctional Facility (DRF). *See* ECF No. 1, PageID.5. Franklin is currently living in Detroit, Michigan. *See* ECF No. 25.

[2] Defendant Nowicki has not been served, with the most recent unexecuted summons stating "unable to locate." *See* Summons (ECF No. 30).

1

> He avers that Defendants Nowicki and Schultz assaulted him, and that Defendant Schultz harassed him with racial epithets and by calling him a homosexual. (ECF No. 1, PageID.3.)

*Id.* After reviewing the attached exhibits (ECF No. 1-1), the Court concluded that plaintiff alleged Eighth Amendment claims against defendants Nowicki and Schultz, *i.e.*, that these two defendants "used excessive force by assaulting him on February 12, 2021." Opinion at PageID.52, 63. Franklin seeks damages. Compl. at PageID.4.

### II. Summary Judgment

#### A. Legal standard

Defendant Schultz has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

2

> plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, Franklin did not file a response in opposition to the motions for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This

> has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

4

**3.     Discussion**

Defendant Schultz points out that Franklin's MDOC Step III Grievance Report shows that before he filed his complaint, he had pursued two Step III grievances, both of which arose out of incidents which occurred at IBC. *See* MDOC Step III Grievance Report (ECF No. 22-3). Neither of these grievances named defendant Schultz.

In IBC-21-04-1123-23e ("1123"), Franklin stated the problem as an altercation with CO Nowicki on February 12, 2021, in which Nowicki told plaintiff to get off the phone and then punched him in the face. Grievance 1123 (ECF No. 22-3, PageID.141). Neither the Step I response nor the Step II response appear in the record. The Step III response states that "The Step II rejection is upheld." PageID.139.

In IBC-21-05-1233-28b ("1233"), Franklin stated the date of the incident as May 3, 2021, and the problem as "why CO Nowicki is not getting discipline" and that "In his police statement he say he punch me many times in the face." Grievance 1233 (ECF No. 22-3, PageID.137). The grievance was rejected at Step I as vague/illegible and cited Policy Directive 03.02.130 to advise Franklin that "Grievances need to state who, what, when, where, why and how. *Id*. The rejection was upheld at Steps II and III. PageID.134, 136.

There is no evidence that Franklin filed a grievance against defendant Schultz for the incident alleged in this lawsuit. The only grievances relate to claims against defendant Nowicki. Based on this record, Franklin did not properly exhaust a grievance to support his constitutional claims against defendant Schultz. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Schultz's motion for summary judgment (ECF No. 22) should be granted.

### III. Recommendation

For these reasons, I respectfully recommend that defendant Schultz's motion for summary judgment on the basis of exhaustion (ECF No. 21) be **GRANTED**.

Dated:  October 31, 2024                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).